213  434
33 SC  534

---

# Masseth, Appellant, *v.* Masseth.

*Wills—Devisavit vel non—Testamentary capacity—Undue influence—Evidence.*

On a petition for an issue devisavit vel non, it appeared that the decedent made a will distributing his estate equally among nephews and nieces. Subsequently he left his home, went to a sanitarium, was there operated upon, and died three weeks after the operation. On the day before his death he was asked whether he desired to make a will, he replied that he did, and a scrivener was sent for and prepared the paper in controversy. This paper was executed by the decedent the following evening, his physician and the scrivener being the subscribing witnesses. Decedent died the following day. A nephew was with the testator at the sanitarium continuously from the time of the surgical operation until his death. To this nephew and his sister, decedent conveyed certain real estate in New York a few days before his death. By the will in controversy he gave small money legacies to the children of a brother, and divided all the residue of his property among his other nephews and nieces. The children of the brother were the petitioners for the issue. The attending physician based his opinion of the incapacity of the decedent, not upon anything he saw with the eye of the physician, nor upon anything he observed in the conduct or conversation of the patient, but solely and exclusively on the fact that the disposition of the property directed in the paper executed did not conform with the wishes expressed by the deceased to him on several occasions, and as recently as the day before. The testimony of the scrivener showed great bodily weakness on the part of the decedent, but nothing to

justify an opinion of mental weakness. The scrivener testified that the decedent verbally instructed him to distribute the balance of the estate among all the nephews and nieces in equal shares, at the same time giving him a written memorandum of instruction. The memorandum did not conform to the oral instructions. The scrivener observing this asked which he should follow. The decedent replied "you follow the writing." The will, as made, followed the written memorandum. The entire paper was read over to the decedent by the physician. He was then asked if that was his will, and he replied that it was. His attention was particularly called to the money legacies to his brother's children. There was no evidence to show that the nephew who was with the testator exercised any control over him, or influenced him in any way in the making of the will. *Held,* that an issue devisavit vel non was properly refused.

Argued Oct. 19, 1905.   Appeal, No. 186, Oct. T., 1905, by plaintiffs, from decree of O. C. Butler Co., June T., 1904, No. 88, refusing an issue devisavit vel non in case of Mary E. Masseth et al. v. Charles B. Masseth et al.   Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Appeal from register of wills.   Before GALBREATH, P. J. The facts are stated in the opinion of the Supreme Court.

*Error assigned* was the decree refusing the issue.

*W. H. Lusk,* with him *E. O. Gibbs* and *W. D. Brandon,* for appellant.—The issue should have been granted : Rees v. Stille, 38 Pa. 138; DeHaven's App., 75 Pa. 337; Schwilke's App., 100 Pa. 628 ; Robinson v. Robinson, 203 Pa. 400 ; Herster v. Herster, 116 Pa. 612 ; Palmer's Est., 24 W. N. C. 159 ; Reichen-bach v. Ruddach, 127 Pa. 564 ; Hamilton's Estate, 4 Pa. Dist. Rep. 161; Rice's Estate, 173 Pa. 298.

*Clarence Walker* and *John M. Murphy,* with them *John S. Keenan,* for appellees, cited : Allison's Est., 210 Pa. 22 ; Eckert v. Flowry, 43 Pa. 46 ; Shaver v. McCarthy, 110 Pa. 339; Herster v. Herster, 122 Pa. 239.

OPINION BY MR. JUSTICE STEWART, January 2, 1906 :
The proceeding in the court below was an appeal from the decree of the register, admitting to probate a paper purporting

to be the last will and testament of Ben Masseth. The only
question there, as here, was whether the evidence submitted
disclosed a substantial dispute about a material fact.

Masseth was a resident of Butler county in this state. With
a view to obtaining relief from a dangerous physical ailment,
from which he was suffering, he went to a sanitarium in the
state of Michigan, in May, 1893. He there submitted to an
operation which proved of no avail, and his death followed in
about three weeks thereafter. When it became apparent that
his end was approaching, he was asked by his attending phy-
sician if he desired to make a will. He replied that he did,
and a scrivener was sent for, who prepared the paper in con-
troversy. This paper was executed by Masseth the following
evening, and attested by the physician, the scrivener and one
other, who was an attendant at the sanitarium, but whose pres-
ent whereabouts are unknown. Masseth died during the even-
ing of the following day.

When the paper was offered for probate before the register
of Butler county, a commission issued to take the testimony of
these attesting witnesses in Michigan. This evidence estab-
lished the execution of the writing; and being specifically in-
terrogated as to the testamentary capacity of Masseth at the
time of its execution, the physician and the scrivener, the only
witnesses examined, the other having removed from the state,
both testified that he was of sound and disposing mind and
memory. The probate of the will followed, as matter of course.
This was followed by an appeal by these contestants, who are
the children of decedent's brother, Edward Masseth, in which
they aver that Ben Masseth, at the time of the execution of
the paper, was not of sound and disposing mind and under-
standing, and that the execution of the paper was procured
through undue influence on the part of Charles Masseth and
others. Evidence was taken, and upon full consideration the
issue asked for was refused and the appeal dismissed.

The case is singular in this, that the only witness called by
contestants to impeach the integrity of the alleged will are the
attesting witnesses to the will itself. The testimony of one of
these witnesses, Dr. Stewart, the attending physician in the
last illness, calls for no consideration in this connection, since
he rests his conclusion that Masseth's mind was confused when

the paper was executed, and his doubts as to whether he was at times in condition to make a will, not upon anything he saw with the eye of the physician, nor upon anything he observed in the conduct or conversation of the patient, but solely and exclusively on the fact that the disposition of the property directed in the paper executed, did not conform with the wishes expressed by Masseth to this witness on several occasions, and as recently as the day before. Apart from this circumstance, the witness saw nothing to indicate that he was not in condition to make a will. His testimony may be dismissed without comment.

The testimony of the scrivener, McCoy, was evasive and inconclusive. He had never seen Masseth except in connection with the making of the will, once when he received instruction as to how it was to be drawn, and again when it was executed. He testified to his weakened physical condition on both occasions, but not to a single act or speech from which an inference of mental weakness could be drawn. He said he had grave doubts whether he understood what he was doing; that sometimes he thought he did, at others, that he did not. When told what was implied in mental capacity, and asked whether he had at that particular time sufficient capacity to make a will, his reply was, " I wouldn't like to answer that question yes or no. If I may be allowed I would answer it that the man was very poorly qualified to do that."

If both of these witnesses, the physician and the scrivener, stood clear of all legal prejudice which attaches in consequence of their asserting now to the contrary of all that their attestation of the will implied, and of what they testified to on examination in connection with its probate, their testimony would furnish no adequate basis for a dispute as to the decedent's testamentary capacity. At most it shows an extreme bodily weakness existing, which, without more, is never allowed to invalidate a will.

The effort to show undue influence, aside from one or two circumstances of but little significance, derives its only support from the testimony of these same witnesses. The relevancy and weight of the evidence in this regard, can be appreciated only as the occasion for the present dispute is understood. The contention arises because of the fact that in this later will,

testator distinguishes between his nephews and nieces, giving to the children of his brother, Edward Masseth, twelve in number, but $400 each, and dividing all the remainder, except the bank stock given to his friend and bookkeeper, John N. Hyle, between his other nephews and nieces, fourteen in number, in equal shares; whereas in his earlier will he had directed an equal division among all his nephews and nieces, and in his conversations with both his physician and scrivener, preceding the making of the last will, declared such to be his wish and purpose; reiterating it to the scrivener at the very time he was giving his instructions as to its preparation.

What the testator said to the physician, standing by itself, is little to the purpose; it shows a change of mind in the testator with respect to his will, and that is all. Here, as on the other branch of the case, the testimony of the scrivener has a larger significance, but no greater effect in the determination of the present inquiry. When this witness was being instructed by Masseth as to how the will should be prepared, he was told by the latter, verbally, that he desired to distribute the balance of his estate between his nephews and nieces in equal shares; at the same time Masseth gave him a written memorandum of instructions. When the witness came to write the will he discovered the disagreement between the verbal and written instructions, and returned and told Masseth of the variance, and asked him which he should observe in preparing the will. Masseth replied, "You follow the writing" or "Make it as it is written." The will having been written according to this last instruction, the next evening, immediately before its execution, so much of it as related to the bequest to Edward Masseth's children, was read over to the testator by the scrivener, and then the entire will was read over to him by the physician. He was then asked if that was his will, and he replied that it was. To the question whether he wished to execute it as his will, or whether he desired the parties present to sign as subscribing witnesses, he replied that he did.

Charles Masseth, a nephew of testator, but not one of the children of his brother Edward, was with testator in the sanitarium continuously from the time of the surgical operation until his death. This nephew and his sister were the only surviving children of their parents. Some days before testator's

death, he conveyed to them a property in New York state valued at $10,000, but subject to a mortgage of $5,000. With this circumstance stated, and the fact that there is a resemblance in the phraseology of the two wills, the one made in Butler, and the other in Michigan, but not in any degree striking or remarkable, the whole of the contestant's case is presented. There is not a word shown to have been spoken by Charles Masseth, or any act done by him, or for that matter, by any one that contributed to the determination of the testator to dispose of his property as he did. So far as the evidence shows, the testator was entirely free from control, and wholly uninfluenced by those about him.

The evidence may afford to some minds a basis for suspicion that testator's real purpose was to equalize Edward Masseth's children with those to whom he had conveyed, during his illness, the property in New York, by giving to each of them $400, and allowing them to share equally with his other nephews and nieces in the remainder; that the scrivener failed to catch the actual meaning of the testator, or the testator failed to understand that the will as written did not express this purpose. Whether such mistake was made in the will can never now be determined. The will must speak for itself. At best it would be a suspicion only, and not in any way a matter of concern in our present inquiry. Barring the possibility of such a mistake on the part of the testator or the scrivener, with which we have nothing to do, the will stands, so far as the evidence shows, the correct expression of the free and deliberate choice of an understanding mind. The assignments of error relating to the admission of evidence and the cross-examination of witnesses, do not need to be considered. If error was committed in respect to these matters, it was inconsequential and therefore without prejudice to appellants.

Appeal dismissed and decree affirmed.